UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────────
UNITED STATES OF AMERICA,

                Plaintiff,

        v.                                **REPORT AND RECOMMENDATION**
                                            18-cr-6089-FPG-JWF

ANTHONY E. MCINTYRE,

                Defendant.
─────────────────────────────────────

### Preliminary Statement

Anthony E. McIntyre ("the defendant" or "McIntyre") is charged by five-count indictment under 21 U.S.C. § 841(a)(1) and (b)(1)(C) with possession of cocaine with intent to distribute; under 18 U.S.C. § 924(c)(1)(A)(i) with possession of a firearm in furtherance of a drug trafficking crime; under 18 U.S.C. §§ 922(k) and 924(a)(1)(B) with possession of a firearm with an obliterated serial number; under 18 U.S.C. §§ 922(g)(1) and 924(a)(2) with being a felon in possession of a firearm; and under 21 U.S.C. § 844(a) with possession of marijuana. Docket # 20.

Presently before the Court are the defendant's pretrial omnibus motions.[1] The defendant's motions for discovery and for Jencks material were resolved by a prior order of this Court filed on November 16, 2018. See Docket # 32. The defendant also seeks suppression of evidence and statements obtained at the scene of a

───────────────
[1] By Order of Hon. Frank P. Geraci, United States District Judge, dated July 24, 2018, all pretrial matters in this case have been referred to the Court pursuant to 28 U.S.C. § 636(b)(1)(A)-(B). See Docket # 21.

1

traffic stop and search. Def.'s Mot. to Suppress (Docket # 26); Def.'s Aff. (Docket # 27). An evidentiary hearing was held on December 11, 2018 and continued on January 3, 2019. See Min. Entries (Docket ## 35, 36). The defendant filed a post-hearing brief on March 29, 2019 (Docket # 39) and the government responded on April 12, 2019 (Docket # 40).

The following is my Report and Recommendation as to the defendant's motions to suppress statements made and physical evidence seized during a stop and search of the black 2017 Jeep Patriot vehicle (hereinafter "the Jeep" or "the vehicle") he was driving on the night of December 1, 2017.

## Findings of Fact

The government called three witnesses to testify at the suppression hearing: Rochester Police Department ("RPD") Officer Chad Brady ("Officer Brady"), RPD Officer Paul Ricotta ("Officer Ricotta") and RPD Officer Kyle Morabito ("Officer Morabito").

Officer Brady testified that he was assigned to patrol the 251 car beat between 2:45 p.m. and 11:00 p.m. on December 1, 2017. December 11, 2018 Hr'g Tr., (Docket # 37) (hereinafter "Tr. 1") at 57. Officer Brady described the 251 car beat as an "open air drug market." Tr. 1 at 56. His partner that night, Officer Ricotta, described the 251 car beat as a "POP area" or a "problem oriented policing" area that is known for high crime. Tr. 1 at 12. As they were traveling northbound on Dewey Avenue at about 9:50 p.m.

2

that night, Officer Brady "observed a black SUV traveling southbound on Dewey Avenue." Tr. 1 at 59-60. Officer Brady noticed the vehicle because he observed the driver of the vehicle make "eye contact" and "believed [the driver] to mouth 'oh, shit,' which is not [a] normal response to seeing a police officer." Tr. 1 at 61 (internal quotation marks added). Officer Brady "[i]mmediately conducted a U turn to see what that was about." Tr. 1 at 61. Officer Ricotta confirmed that they had been traveling northbound on Dewey Avenue and then "just turned around" to head southbound where Officer Ricotta observed a black Jeep Patriot in front of their police vehicle. Tr. 1 at 16, 30. While Officer Brady testified that he "told [Officer Ricotta] why I was turning around," - because the defendant "just mouthed oh, shit" - Officer Ricotta testified that Officer Brady did not tell him why he decided to turn around and follow the Jeep. Tr. 1 at 31, 87. In addition, Officer Brady did not include the observation about what the driver mouthed in his official police report regarding the incident. Tr. 1 at 86.

After making the U-turn and travelling in the same direction of the black SUV, Officer Brady observed the SUV make a left-hand turn eastbound onto Ravine Avenue and "[t]he driver and the vehicle did not signal a hundred feet before the turn." Tr. 1 at 62. Officer Ricotta also saw the vehicle turn left onto Ravine Avenue. According to Officer Ricotta, "the turn signal came on" only as

3

the SUV "started to make the left turn." Tr. 1 at 17. Officer Ricotta testified they were "[m]aybe 40 feet" behind the Jeep when it turned left. Tr. 1 at 19. Officer Brady estimated they were "[t]hree car lengths, maybe 45 feet" behind the SUV when it turned left. Tr. 1 at 63.

Believing they had witnessed a traffic infraction, Officer Brady activated the emergency lights on the patrol vehicle. Tr. 1 at 66. Officer Ricotta saw the Jeep pull "abruptly" into the driveway of 354 Ravine Avenue and he and Officer Brady "pull[ed] in behind it with [their] lights on." Tr. 1 at 19, 67. 354 Ravine Avenue was the residence of Troy Claiborne who did not recognize the Jeep when he exited his home to question the officers' presence there. January 3, 2019 Hr'g Tr., (Docket # 38) (hereinafter "Tr. 2"), at 120-22.

The driver of the Jeep SUV, whom Officer Ricotta identified as McIntyre, then put the SUV in park, exited the car, and began to run on foot northbound into the backyard behind 354 Ravine Avenue. Tr. 1 at 22, 68. The engine on the Jeep was still running after McIntyre left the vehicle. Tr. 1 at 40, 89. Neither Officer Brady nor Officer Ricotta could recall whether the defendant left the driver's side door open when he exited the Jeep. Tr. 1 at 41, 90. Officer Brady yelled for the driver, whom he also identified as McIntyre, to stop and followed McIntyre up the driveway. Tr. 1 at 68-69, 91. As Officer Brady and the defendant ran up the

driveway, Officer Brady "saw a red vial that dropped from [the defendant's] person." Tr. 1 at 93-94. Then, "the defendant stumble[d] into a garbage can or what appear[ed] to be some sort of garbage can." Tr. 1 at 91. It was muddy and both Officer Brady and the defendant slipped near the garbage can. Tr. 1 at 92-93. Officer Brady saw the defendant steady himself but did not see him put anything into the garbage can. Tr. 1 at 93. McIntyre then ran back down the driveway southbound. Tr. 1 at 93. McIntyre was eventually apprehended nearby at 14 Maryland Street. Tr. 1 at 47.

When McIntyre was apprehended and arrested, he was searched incident to his arrest. See Tr. 1 at 23. Officer Ricotta testified that McIntyre had a "large amount of powder cocaine" on his person. Tr. 1 at 23. A handgun was later found in the garbage can in the backyard of 354 Ravine Avenue. Def.'s Mot. to Suppress (Docket # 26), at 4-5. Officer Morabito appeared on the scene to attend to the vehicle. Tr. 2 at 113. Officer Morabito testified that an inventory search of the vehicle was conducted, from which officers recovered a "small amount of marijuana" and "liquor bottles" which were found in the back seat of the Jeep. Tr. 2 at 119, 130, 132. Officer Morabito later filled out a tow slip and called to have the Jeep towed pursuant to RPD policy following a felony drug arrest. Tr. 2 at 117-18, 130.

Discussion

McIntyre seeks to "suppress all statements[2] and tangible evidence" obtained by law enforcement on December 1, 2017. See Def.'s Post-Hr'g Mem. of Law (Docket # 39) at 4. According to the defense, "McIntyre contends that all evidence should be suppressed as the fruit of an unlawful traffic stop." Id.

Stop of the Jeep: The parties agree on the legal landscape governing the legality of the traffic stop. An automobile stop constitutes a "seizure" for Fourth Amendment purposes. Whren v. United States, 517 U.S. 806, 810 (1996) (citing Delaware v. Prouse, 440 U.S. 648, 653 (1979)); United States v. Gomez, 877 F.3d 76, 86 (2d Cir. 2017). McIntyre has satisfied his burden of production by establishing that he was seized when Officer Brady activated his patrol car's emergency lights and initiated the traffic stop. See United States v. Murphy, 778 F. Supp. 2d 237, 255 (N.D.N.Y. 2011), aff'd, 703 F.3d 182 (2d Cir. 2012) (deeming defendant seized when traffic stop initiated). The burden now shifts to the government to demonstrate by a preponderance of the evidence that the seizure did not violate the defendant's Fourth Amendment rights. United States v. Arboleda, 633 F.2d 985, 989 (2d Cir. 1980).

---

[2] The government has represented that it will not use any post-arrest statements the defendant made on the evening of December 1, 2017 in its case-in-chief. See Government's Resp. to Def.'s Pre-Trial Motions (Docket # 30) at 6. Accordingly, to the extent such statements are alleged to be fruits of the illegal stop, I agree with the government that the motion is moot. Id.

6

An automobile stop must be reasonable under the circumstances to satisfy the Fourth Amendment. Whren, 517 U.S. at 810. For an automobile stop to be reasonable, the officer making the stop must "have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." Holeman v. City of New London, 425 F.3d 184, 189 (2d Cir. 2005); see Terry v. Ohio, 392 U.S. 1, 21 (1968). "Any evidence seized based upon an illegal stop 'is subject to the fruit of the poisonous tree doctrine,' and may be suppressed." United States v. Scopo, 19 F.3d 777, 781 (2d Cir. 1994) (quoting United States v. Hassan El, 5 F.3d 726, 729 (4th Cir. 1993)).

In this case, the reason for the traffic stop was an observed violation of New York's Vehicle and Traffic Law. Both Officer Brady and Officer Ricotta testified under oath that they witnessed the defendant activate his turn signal while the Jeep he was driving had already commenced the process of making a left turn. If true, McIntyre's conduct would indisputably violate section 1163(b) of New York's Vehicle and Traffic Law which provides that a "signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning." See United States v. Fernandez-Jimenez, No. 03Cr.1493(RPP), 2004 WL 1598653, at *3

7

(S.D.N.Y. July 16, 2004) (officers' observation that vehicle turned without using turn signal justified traffic stop).

The defense agrees that it does not matter if the stop of the Jeep was motivated by some other reason harbored by the police. Indeed, Officer Brady admitted as much when he testified that he became suspicious of the Jeep when he saw the defendant make eye contact with his police vehicle and then mouth "oh shit." But the law is settled that a traffic stop does not violate the Fourth Amendment simply because it was pretextual. Whren, 517 U.S. at 813 ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."); United States v. Dhinsa, 171 F.3d 721, 724-25 (2d Cir. 1998) ("A police officer who observes a traffic violation may stop a car . . . without regard to the officer's own subjective intent."); Scopo, 19 F.3d at 782 ("When an officer observes a traffic offense - however minor - he has probable cause to stop the driver of the vehicle." (internal quotations and citations omitted)).

The defense does not dispute "that an observed violation of the New York Vehicle and Traffic Law would be a sufficient basis for a stop." Docket # 39, at 6. What McIntyre claims is that Officer Brady's and Officer Ricotta's testimony about what they observed the evening of December 1, 2017 "is simply unbelievable." Id. at 7. In arguing that Officer Brady's and Officer Ricotta's testimony was not credible, McIntyre focuses on Officer Brady's

8

testimony that he told Officer Ricotta he saw McIntyre mouth "oh shit" but Officer Ricotta "apparently has no memory of this unusual conversation." Id. at 8. But the fact that Officer Ricotta's and Officer Brady's recollections did not match on Officer Brady's "oh shit" observation can also be interpreted as supporting their credibility, not impugning it. If pretextual justifications for following the Jeep do not matter, what is Officer Brady's motivation for creating a false one? And if Officer Brady was not credible when he testified he saw McIntyre mouth "oh shit," does that make Officer Ricotta more credible when he testified that he observed the defendant violate section 1163(b) of New York's Vehicle and Traffic Law because he would not join in Officer Brady's pretextual justification for making the U-turn?

Obviously, there is no easy or simple formula to ascertain credibility. It is a responsibility that is inherent in the duties of the Court and one which I do not take lightly. The Court is cognizant that the defendant filed two affidavits asserting that he "activated [his] turn signal more than 100 feet before [he] reached the intersection." Docket ## 27, 34. But I am also aware that Officers Ricotta and Brady testified to the contrary under oath and were subjected to cross-examination. While the officers' testimony did not match perfectly on what happened before the Jeep was stopped, it was consistent on whether the defendant was observed committing a traffic violation. Based on my observation

9

of their testimony and the manner in which they testified, the Court credits their testimony over the defendant's affidavits. See United States v. Rodriguez, 368 F. App'x 178, 180 (2d Cir. 2010) ("Although defendant submitted an affidavit . . . it was not clearly erroneous for the District Court to credit the officers' testimony over defendant's affidavit." (citation omitted)); United States v. Abu Ghayth, 945 F. Supp. 2d 511, 513, n.11 (S.D.N.Y. 2013) ("Abu Ghayth declined to testify at the suppression hearing and relies on only his affidavit. This Court considers his affidavit, but affords it less weight than credible testimony offered at the hearing."); United States v. Al-Marri, 230 F. Supp. 2d 535, 539 (S.D.N.Y. 2002) ("Consequently, this Court follows the lead of other federal courts in valuing the weight of live witnesses' testimony over the contents of a defendant's affidavit, and gives lesser consideration to Al-Marri's version of the facts." (citation omitted)); see also DiMattina v. United States, 949 F. Supp. 2d 387, 410-11 (E.D.N.Y. 2013) ("DiMattina has chosen not to testify in his own defense. That is his constitutional right. Yet, he cannot use that right as shield to protect him from potential criminal liability while concomitantly wielding his affidavits as a sword to cast doubt on testimony found credible by the court as fact-finder. Without the threat of cross-examination, DiMattina's affidavits are viewed as self-serving and given little weight.").

Having found that the government sustained its burden of demonstrating that the traffic stop was lawful, it is my Report and Recommendation that the defendant's motion to suppress the evidence seized as a result of the stop be **denied**.[3]

## Conclusion

For the foregoing reasons, it is my Report and Recommendation that the defendant's motion to suppress evidence be **denied**.

SO ORDERED.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:   June 10, 2019
         Rochester, New York

---

[3] Prior to commencement of the fact-finding hearing, the defendant agreed with the government that if the Jeep was towed from 354 Ravine Avenue pursuant to a search policy that required a tow and inventory search of any vehicle involved in a felony-level drug arrest, the basis for suppression of the small amount of marijuana found in the car during the inventory search was limited to McIntyre's claim that the seizure of the marijuana was the fruit of an illegal traffic stop. See Tr. 1 at 6-7. An RPD tow policy (Government's Ex. 6) was received into evidence without objection during Officer Morabito's testimony about the inventory search of the Jeep. See Tr. 2 at 116. Based on Officer Morabito's unchallenged testimony, the Court finds that a tow policy existed and was applied to the inventory search and tow of the Jeep. Having addressed the basis for the defendant's motion, I need not address the government's alternative argument that McIntyre lacks standing to complain about the search of the Jeep because he "abandoned" the vehicle when he fled from the police. See Government's Post-Hr'g Br. (Docket # 40) at 6-9.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York.[1]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u> Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." <u>Failure to comply with the provisions of Rule 59(b)(2) may result in the District Court's refusal to consider the objection.</u>

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated:    June 10, 2019
          Rochester, New York

---

[1] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. United States v. Andress, 943 F.2d 622 (6th Cir. 1991), cert. denied, 502 U.S. 1103 (1992); United States v. Long, 900 F.2d 1270 (8th Cir. 1990).